IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PETE COFFEY, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. CIV-05-1086-M |
| ) | |
| CAPTAIN E. WILSON, ) | |
| ) | |
| Respondent ) | |

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. Pursuant to an order entered by United States District Judge Vicki Miles-LaGrange, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The matter is currently before the Court on Petitioner's "Motion for Leave of Court to Submit Amended Petition as Initially Filed." [Doc. No. 33]. Respondent has responded to the motion and Petitioner has filed a reply. Thus, the motion to amend is at issue. Additionally, Respondent has filed a response to the second amended petition, and Petitioner has filed a reply. Thus, the second amended petition is at issue. For the reasons set forth herein, it is recommended that the motion to amend be denied and that the claims in the second amended petition be denied as well.

**I.    PETITIONER'S STATE COURT LITIGATION**

By this action, Petitioner challenges his conviction following a jury trial for manufacturing a controlled and dangerous substance (methamphetamine), for which he was sentenced to ten years imprisonment. Case No. CF-2002-533, District Court of

Comanche County. Second Amended Petition, p. 1. Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals affirmed in a summary opinion dated September 23, 2004. Case No. F-2003-989, Oklahoma Court of Criminal Appeals. Second Amended Petition, p. 2; Response, Ex. C. Thereafter, Petitioner filed an application for state post-conviction relief, and the application was denied on September 8, 2005. Petition, p. 3-4; Response, Ex. E. Petitioner did not file a timely appeal from that denial. On October 28, 2005, Petitioner filed a second application for post-conviction relief in the District Court of Comanche County, contending that he had been denied an appeal from the denial of his first application for post-conviction relief through no fault of his own. Response, p. 2; Response, Ex. F. The District Court of Comanche County denied relief on December 22, 2005. Response, p. 2; Response, Ex. G. Thereafter Petitioner sought leave to appeal out of time from the Oklahoma Court of Criminal Appeals with regard to the District Court of Comanche County's September 8, 2005 order. Response, p. 2; Response, Ex. H. The Oklahoma Court of Criminal Appeals granted Petitioner leave to appeal out of time and affirmed the denial of post-conviction relief on April 27, 2006. Response, p. 2; Response, Ex. I.

## II.     THE CURRENT 28 U.S.C. § 2254 PROCEEDINGS

Petitioner filed his § 2254 petition on September 16, 2005. In a September 28, 2005, Report and Recommendation, the undersigned recommended that the petition be dismissed without prejudice, because it was a mixed petition, that is, it contained both exhausted and unexhausted claims. Alternatively, the undersigned recommended that Petitioner be permitted to file an amended petition, omitting his unexhausted claims.

Petitioner filed an objection to the Report and Recommendation, and he asked Judge Miles-LaGrange to hold the petition in abeyance as he attempted to exhaust the entire petition. [Doc. No. 9]. Petitioner also sought leave to amend his petition to dismiss his unexhausted claims. [Doc. No. 9]. On December 5, 2005, Judge Miles-LaGrange adopted the September 28, 2005 Report and Recommendation, granted Petitioner leave to amend his petition to dismiss his unexhausted claims, and denied Petitioner's request that the case be held in abeyance pending his attempt to exhaust his claims in state court. [Doc. No. 10]. Petitioner's amended petition was filed on December 5, 2005. [Doc. No. 11].

On December 9, 2005, in light of Petitioner's decision to proceed with only his exhausted claims, the undersigned issued an order granting Petitioner another opportunity to dismiss the entire petition without prejudice. The order forewarned Petitioner that if he decided not to dismiss the first amended petition, that any future habeas corpus petition challenging his conviction could be barred as second or successive under 28 U.S.C. § 2244(b)(2). [Doc. No. 13]. Petitioner was given until December 23, 2005 to advise the Court in writing if he chose to dismiss the petition. Petitioner did not respond to the Court's warning.

However, on December 16, 2005, apparently in response to the Court's December 9, 2005 order, Petitioner requested an enlargement of time to exhaust his state court remedies. [Doc. No. 14]. On that same date Petitioner filed an application for an extension of time, seeking ninety days in which to exhaust his state court remedies. [Doc. No. 15]. On January 13, 2006, the undersigned issued a Supplemental Report and Recommendation, recommending that the request for enlargement of time be denied.

3

[Doc. No. 16].  The Supplemental Report and Recommendation informed Petitioner that stay and abeyance is proper only in limited circumstances, none of which were presented in this case, especially because Petitioner had substantial time remaining before expiration of his statute of limitations.  Petitioner was also reminded that if he chose to proceed with only his exhausted claims, that he could be precluded from seeking habeas relief on the claims that were currently being exhausted in state post-conviction proceedings. [Doc. No. 16].   Judge Miles-LaGrange adopted the Report and Recommendation on February 24, 2006, noting that Petitioner had not filed an objection. [Doc. No. 21].  Petitioner then filed a motion for reconsideration, asking the Court to reconsider its denial of his request for an enlargement of time to exhaust his state court remedies and abatement of this action pending those state court proceedings. [Doc. No. 22].  The Court denied the request on March 17, 2006. [Doc. No. 26].

In the midst of Petitioner's repeated requests for abatement of his action, Respondent filed a motion to dismiss the petition on February 23, 2006, arguing that Petitioner had failed to omit all of his unexhausted claims from the amended petition. [Doc. No. 19]. Petitioner conceded his failure, asserting that he had "inadvertently" failed to omit his unexhausted claims from his amended petition. [Doc. No. 23].  On March 13, 2006, Petitioner filed a second amended petition, properly omitting his unexhausted claims. [Doc. No. 24].  By order date April 3, 2006, the Court permitted the second amended petition to stand as the operative pleading in this case. [Doc. No. 27]. Thereafter, the Respondent responded to the merits of the second amended petition. [Doc. No. 30]. Three days thereafter Petitioner filed his motion to amend, seeking to file

a third amended petition identical to the initial petition filed in this case, because his state remedies had finally been exhausted. [Doc. No. 33]. As noted, Respondent has objected to the motion to amend and Petitioner has replied to that objection. Additionally, Petitioner has replied to Respondent's response to the second amended petition.

### III. PETITIONER'S MOTION TO AMEND

As stated, Petitioner has now exhausted his previously unexhausted claims and seeks leave to amend his petition to reinstate the claims that he voluntarily chose to dismiss. Respondent objects to the motion arguing that through repeated delays Petitioner has circumvented the Court's prior rulings that this action would not be held in abeyance pending his exhaustion of state court remedies.

Pursuant to 28 U.S.C. § 2242, habeas corpus actions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." Accordingly, Federal Rule of Civil Procedure 15(a) applies to proceedings under 28 U.S.C. § 2254. See also Rule 11, Rules Governing Habeas Corpus Cases Under § 2254. Rule 15(a) provides, in pertinent part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Having previously filed an amended petition, Petitioner is permitted to amend again only if he receives written consent of the adverse party or leave of Court. Consent by the

5

adverse party is clearly lacking in light of Respondent's objection to the instant motion. Accordingly, the Petitioner's sole avenue is through leave of Court.

As noted above, leave to amend "shall be freely given when justice so requires."

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also, Gillette v. Tansy, 17 F.3d 308, 312-13 (10th Cir. 1994).

The decision on whether to permit the amendment of pleadings lies within the discretion of this Court. Varley v. Tampax, Inc., 855 F.2d 696, 700 (10th Cir.1988). In light of Petitioner's bad faith and dilatory motives, the undersigned hereby recommends that the motion to amend be denied. As set forth above, Petitioner has been repeatedly warned about the ramifications of proceeding with his exhausted claims while choosing to voluntarily dismiss his unexhausted claims. Although Petitioner chose to voluntarily dismiss his unexhausted claims, he did not heed the Court's repeated advice to dismiss the entire petition without prejudice, exhaust all of his claims, and then return to this Court. Rather, Petitioner set out to derail the resolution on the merits of his habeas corpus claims by filing repetitive meritless motions.

After the Court's September 28, 2005 Report and Recommendation, Petitioner objected, sought leave to amend, and requested abatement of this action pending exhaustion. On December 5, 2005, Judge Miles-LaGrange denied his request to hold the

petition in abeyance and granted leave to amend. [Doc. No. 10]. Petitioner's amended petition, however, did not omit all of his unexhausted claims.[1] Further, the undersigned issued an order after the amended petition was filed, warning Petitioner of the consequences of his decision to proceed and giving him another opportunity to dismiss this action. Additionally, despite the fact that Judge Miles-LaGrange had previously denied his request to hold the petition in abeyance, Petitioner filed a motion for enlargement of time to exhaust state remedies, again requesting that consideration of the merits of his petition be stayed pending exhaustion of the claims he had voluntarily dismissed.[2] Petitioner did not object to the undersigned's Report and Recommendation recommending that the extension be denied. However, once Judge Miles-LaGrange adopted the Report and Recommendation, Petitioner filed a motion for reconsideration, a motion completely unwarranted in fact or law.

Having squandered months of time in this Court with the filing of meritless delaying motions, Petitioner was rewarded with a fairly rapid decision by the Oklahoma Court of Criminal Appeals on the merits of his appeal from the denial of post-conviction relief. Despite the fact the Court has twice denied his request for abeyance pending exhaustion, has twice permitted him to amend the petition, and has repeatedly warned him of the consequences of proceeding with only his exhausted claims, he seeks to amend his petition to include those claims that were unexhausted at the time of his

---

[1] A fact not known to the Court until Respondent raised the issue, which was conceded by Petitioner.

[2] At the time Petitioner filed his motion for extension of time, the Respondent had not yet filed his motion to dismiss indicating that Petitioner had failed to omit all of his unexhausted claims.

7

filing, but that have since been exhausted. Therefore, on the heels of the filing of the Respondent's response to the petition, Petitioner filed the instant motion, seeking to reinstate his previously unexhausted claims. It is Petitioner's bad faith and dilatory tactics in filing the repetitive motions for abeyance, when armed with the knowledge that he could lose the opportunity to ever raise the claims that he voluntarily chose to dismiss, that leads the undersigned to recommend the denial of the motion to amend.

Petitioner contends that he followed the Court's directions by amending his petition to dismiss his unexhausted claims while simultaneously attempting to exhaust those claims in state court. Although Petitioner claims to have followed the Court's instructions, it is clear from the first Report and Recommendation in this case that Petitioner should have dismissed the entire action at that time and sought to exhaust his state court remedies before filing another petition. The undersigned noted in that September 28, 2005 Report and Recommendation that Petitioner had ample time in which to exhaust his claims before the expiration of his one-year statute of limitations period, even without consideration of tolling principles, which clearly would have applied. Nevertheless, and despite repeated warnings, Petitioner pressed on with parallel proceedings, apparently hoping to forestall a conclusion in his federal case for a sufficient amount of time to permit the Oklahoma Court of Criminal Appeals to rule on his post-conviction application. As noted, Petitioner was successful. If Petitioner had filed but a single request for abeyance the undersigned would not conclude that he was acting in bad faith and with dilatory motives. However, the combination of warnings issued by the Court and Petitioner's repeated delaying tactics lead the undersigned to

conclude that Petitioner was acting in bad faith and with dilatory motives with his frequent filings in an effort to avoid a resolution on the merits of his second amended petition so as to permit him time to exhaust all of his original claims. The undersigned concludes that permitting Petitioner to amend in this situation would encourage other state prisoners to take similar evasive action in an effort to avoid having to pay a second filing fee, the only negative consequence that Petitioner would have faced if he had chosen in September 2005 to dismiss his entire petition without prejudice and to conclude his proceedings in state court prior to seeking federal habeas corpus relief. Accordingly, the undersigned recommends the denial of Petitioner's request for leave to amend.

     This position may appear heavy-handed. However, in addition to Petitioner's repeated attempts to circumvent the Court's prior orders denying him a stay and abeyance, he has been less than diligent in seeking to exhaust his state court remedies and in filing the most recent motion to amend. Petitioner's original application for post-conviction relief was denied by the District Court of Comanche County on September 8, 2005, shortly before Petitioner filed his premature petition in this action. Petitioner asserts that he did not receive a copy of the order denying post-conviction relief in time to pursue a timely appeal. However, it was not until October 28, 2005, that Petitioner filed a second application for post-conviction relief, seeking an appeal out of time. When that request was denied on December 22, 2005, Petitioner waited until February 9, 2006 to file an action in the Oklahoma Court of Criminal Appeals, seeking an appeal out of time. Furthermore, after the Oklahoma Court of Criminal Appeals issued its April 27,

9

2006 decision affirming the denial of Petitioner's request for post-conviction relief, Petitioner did not immediately come to this Court seeking leave to amend. Rather, he waited almost one month before requesting leave to amend in this case, and he only did so after Respondent had responded to the merits of the second amended petition. Had Petitioner taken the Court's original advice in September 2005, dismissed this petition, and diligently pursued an appeal out of time, he would not currently be faced with the choice of having only some of his claims heard or defaulting on all of his claims because the one-year limitations period has expired. This situation, however, is one of Petitioner's making; it is the result of his attempt to control the litigation in this forum in an effort to avoid a decision here while attempting to exhaust his post-conviction remedies in state court. In light of Petitioner's bad faith and delay, the undersigned hereby recommends that Petitioner's motion to amend [Doc. No. 33] be denied.

## IV. PETITIONER'S SECOND AMENDED PETITION

The second amended petition contains two claims. In Ground One, Petitioner claims that the peace officers' warrantless entry into his house violated the Fourth Amendment's prohibition against unreasonable searches. Second Amended Petition, p. 5. In Ground Two, Petitioner presents a related claim, arguing that the affidavit of probable cause for the search warrant violated the Fifth and Fourteenth Amendments of the United States Constitution. Second Amended Petition, p. 8.

### A. PETITIONER'S CONVICTION

The following facts are taken from the preliminary hearing transcript (hereinafter Tr. __) in Case No. CF-2002-533, District Court of Comanche County. On December 4,

2002, the Comanche County Sheriff's dispatcher received an anonymous tip that people were seen carrying a rolled blanket or carpet into a house, and that the rolled item appeared to contain a body. Tr. 5-6. The anonymous informant stated that he had seen what appeared to be long blond hair coming from the rolled blanket or carpet. Tr. 6. The property where the allegedly suspicious activity was occurring was described as being at the intersection of Post Oak and Gore Boulevard in Comanche County, the site of Petitioner's rural residence. After receiving this information from the dispatcher, officers with the Comanche County Sheriff's Department drove to the residence in an attempt to make contact with the residents. Tr. 7.

Deputy Louis Maldonado arrived at the residence and he observed that Petitioner and four other men were in a patrol car. Tr. 7, 23. Deputy Maldonado was informed by another officer that although the men denied that anyone else was in the house, noises had been heard that indicated otherwise. Tr. 31-32, 41-42. Additionally, Deputy Maldonado was informed that the officers smelled ether, a chemical that he knew was used in manufacturing of methamphetamine, and Deputy Maldonado also smelled it. Tr. 9, 21, 29, 30. In an effort to ensure that no other people were in the house, including a body in a rolled blanket or carpet, Deputy Maldonado and two other officers entered the house. Tr. 9, 31, 40. The officers determined that no one was inside the residence, but they discovered that in addition to the smell of ether, the house and garage contained items associated with the manufacturing of methamphetamine. Tr. 10-12, 31-34, 36-37. After ensuring that the house was empty, officers obtained a search warrant based on the laboratory components seen during their sweep of the property. Tr. 12-13, 44-47. During

11

the subsequent search with the warrant, officers discovered many items associated with manufacturing methamphetamine, including an open flame heater, multi-layer liquids in jars in several locations, a homemade hydrogen chloride filter, a hand postage scale, and a plastic balance beam scale.  Tr. 92, 93, 97-106.

### B. STANDARD GOVERNING APPLICATIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have already been adjudicated in state court, the Court may only grant a writ of habeas corpus if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or  confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413; see also Wiggins v. Smith, 539 U.S. 510, 520 (2003).  It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable.  Williams, 529 U.S. at 410-11; Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir.), cert. denied, 543 U.S. 1008 (2004).

**C.  DISCUSSION**

    **1.  Grounds One and Two**

In Ground One, Petitioner alleges that the initial search of his residence without a warrant violated his rights under the Fourth Amendment to the United States Constitution, thereby entitling him to have any evidence seized suppressed.  In Ground Two, a related claim, Petitioner argues that the affidavit used to support issuance of the warrant did not establish probable cause.  Respondent contends that because Petitioner had a full and fair opportunity to litigate these issues in state court, federal habeas relief is precluded.³  The undersigned agrees.

Under clearly established federal law, a Fourth Amendment violation does not support federal habeas relief if the petitioner had a full and fair opportunity to litigate the issue in state court.  <u>Stone v. Powell</u>, 428 U.S. 465, 481-82 (1976).  The rule in <u>Stone</u> forecloses federal habeas relief even if the arrest and seizure of evidence violated the Petitioner's Fourth Amendment rights: "Under <u>Stone</u>, habeas relief shall not be granted on the ground that the trial court admitted evidence obtained in violation of the Fourth Amendment despite the judicially-created exclusionary rule, provided that the defendant had an opportunity for full and fair litigation of the Fourth Amendment claim." <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1265 (10th Cir. 1999) (citing <u>Stone v. Powell</u>, 428 U.S. 465, 481-82 (1976)). That opportunity may exist either at trial or on direct review. <u>Stone v. Powell</u>, 428 U.S. at 494-95 n. 37 ("we hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a

---

³ As noted by Respondent, the Oklahoma Court of Criminal Appeals considered these claims in tandem in deciding Petitioner's direct appeal.  Response to Petition, p. 4, n. 1.

showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review").

As argued by Respondent, Petitioner raised the same Fourth Amendment claim contained in Ground One in the state courts. At the preliminary hearing, trial counsel made an oral motion to suppress. Tr. 145-49. Counsel argued that the entry into Petitioner's residence was illegal and that the subsequent issuance of the warrant was based on subterfuge. Tr. 147-49. The trial court denied the motion, concluding that the officers were acting in good faith and out of concern for public safety when they made the original warrantless entry into the home. Tr. 147-49.

Petitioner re-urged these arguments in a written motion to suppress filed on July 25, 2003. Response, Ex. K. The District Court of Comanche County denied the motion on August 14, 2003. Response, Ex. K. Following his conviction, Petitioner raised the issue on direct appeal, and the Oklahoma Court of Criminal Appeals affirmed:

> The search warrant for [Petitioner's] house, which generated the evidence against him, was based on what Officer Maldonado saw during his earlier warrantless entry into the house. [Petitioner] argues that this entry violated his right against illegal search and seizure. Officers testified that they felt compelled to clear the house based on the combination of (a) an anonymous tip reporting a possible body in a carpet; (b) the noise they believed they heard inside the house after [Petitioner] and other people joined officers outside; and (c) the strong odor of ether, a highly dangerous and explosive chemical used in methamphetamine manufacture. Rather than address these circumstances in combination, [Petitioner] focuses on the anonymous tip. He claims that this does not constitute probable cause to search, and the warrantless entry did not fit into any exigent circumstance. However, the evidence showed officers only decided to clear the house after Maldonado confirmed that the chemical odor was ether, in a concentration which appeared to constitute a danger to public safety, and it was possible that someone remained in the house.

The search issue raises a question of first impression. This Court has not considered whether warrantless entry based on likelihood of a clandestine methamphetamine lab constitutes a public safety hazard rising to an exigent circumstance. Several other jurisdictions, including the Tenth Circuit, have found that it does. This decision is justified by the extremely volatile and explosive nature of the chemicals used in manufacturing methamphetamine.  These, when found in the unsterile and haphazard settings usually associated with clandestine laboratories, have long been proved to constitute both an immediate health hazard to bystanders and a menace to public safety.  The Tenth Circuit set out a test for establishing this public safety exigent circumstance: (a) officers must have reasonable grounds to believe there is immediate need to protect their lives or property, or that of others, (b) officers cannot search in order to make an arrest and seize evidence, and (c) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.

This Court now adopts both this public safety exigent circumstance exception and this test.  As the Supreme Court has noted, a warrantless entry may be justified by the immediate need to protect or preserve life or avoid serious injury.  It is true that ether, and other chemicals used in the manufacture of methamphetamine, are legal.  However, they are also dangerous.  This Court holds that a public safety exigent circumstance exception to the warrant requirement exists where evidence shows (a) an odor indicating the presence of an apparently dangerous concentration of ether or another chemical commonly used in the manufacture of methamphetamine; (b) that the reporting officers were aware of the volatile and explosive nature of the chemicals and the potential danger to the public; and (c) the possibility that persons in the area might be in danger from the chemicals.  Under those circumstances, a brief entry into the property, to confirm the presence of the dangerous items and the absence of any persons, will not violate a defendant's rights against a warrantless search. Of course, after making these initial determinations and removing anyone in danger, officers should retreat and secure a warrant.

The facts of this case fit within the public safety exigent circumstance exception. An experienced officer, familiar with the volatile and explosive qualities of ether, smelled a strong odor of ether from [Petitioner's] house. There was some possibility that a person was inside the house, in danger from the chemicals. Having this reasonable basis to associate an emergency with [Petitioner's] house, officers briefly entered.  They stayed long enough to look in every room and establish that the house was empty.  Afterwards, they closed the house and got a search warrant.  The initial warrantless entry was justified by exigent circumstances.

Summary Opinion, p. 2-6, Response, Ex. C (footnotes omitted). Thus, the record shows that Petitioner did have a full and fair opportunity to litigate his Fourth Amendment claims in the state courts, and that the trial and appellate court rejected the claims on the merits. Accordingly, Stone precludes federal habeas relief. See e.g., Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming denial of federal habeas relief based on alleged Fourth Amendment violations because the "petitioner's appellate counsel [had] presented the issue to the [Oklahoma Court of Criminal Appeals] on direct appeal"); Chavez v. Rodriguez, 540 F.2d 500, 502 (10th Cir. 1976) (per curiam) (holding that a hearing on a motion to suppress and the consideration of the issue on appeal satisfied "[t]he dictates of Stone v. Powell"). Therefore, it is recommended that habeas corpus relief be denied on Grounds One and Two.

## RECOMMENDATION

For these reasons, the undersigned recommends that Petitioner's motion to amend be denied and that the second amended petition for writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by September 11, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 21st day of August 2006.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE